BRACEWELL LLP
Robert G. Burns
Mark E. Dendinger
Joshua D. Neifeld (*pro hac vice* pending)
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 508-6100
Facsimile: (212) 508-6101

*Proposed Counsel for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>Seabras 1 USA, LLC *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 19-14006 (SMB)<br><br>(Jointly Administered) |

**DEBTORS' MOTION FOR ENTRY OF INTERIM AND
FINAL ORDERS UNDER BANKRUPTCY CODE SECTIONS
105(A), 361, 362, 363, AND 507 AND BANKRUPTCY RULES 4001 AND 9014
(I) AUTHORIZING DEBTORS TO USE CASH COLLATERAL, (II) GRANTING
ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES,
(III) SCHEDULING A FINAL HEARING, AND (IV) GRANTING RELATED RELIEF**

Seabras 1 USA, LLC ("**Seabras USA**") and Seabras 1 Bermuda Ltd. ("**Seabras Bermuda**" and, together with Seabras USA, the "**Debtors**"), the debtors and debtors in possession in the above-captioned chapter 11 cases (the "**Cases**"), hereby move (this "**Motion**") this Court for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "**Interim Order**") (a) authorizing the Debtors' use of cash collateral, (b) granting adequate protection to the Prepetition Secured Parties (as defined herein), (c) scheduling a final hearing, and (d) granting related relief. In support thereof, the Debtors respectfully represent as follows:

---

[1] The Debtors in these Cases, along with the last four digits of their respective tax identification numbers, are Seabras 1 USA, LLC (0027) and Seabras 1 Bermuda Ltd. (7149). The Debtors' principal offices are located at 600 Cummings Center, Suite 268-Z, Beverly, MA 01915.

## BACKGROUND

1. On December 22, 2019 (the "**Petition Date**"), each Debtor commenced a voluntary case with this Court under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"). The Debtors continue to operate their businesses and manage their properties as debtors and debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108. No trustee, examiner or statutory committee of creditors has been appointed in these Cases. The Cases are jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

2. The Debtors, together with their non-Debtor subsidiaries, own a 10,800 km subsea telecommunications cable system connecting the U.S. with Brazil known as Seabras-1. Additional information regarding the Debtors' business, capital structure, and the circumstances leading to the commencement of these Cases is set forth in the *Declaration of Roger Kuebel in Support of Chapter 11 Petitions and First Day Motions* [D.I. 2] (the "**First Day Declaration**"), which was filed on the Petition Date and is incorporated herein by reference.[2]

## JURISDICTION

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.). This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The bases for the relief requested herein are sections 105(a), 361, 362, 363(c), 363(e), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), and 364(e) of the Bankruptcy Code, Bankruptcy

---

[2] Capitalized terms used, but not otherwise defined herein, shall have the meanings ascribed to such terms in the First Day Declaration.

Rules 2002, 4001 and 9014, and Rule 4001-2 of the Local Bankruptcy Rules for the Southern District of New York (the "**Local Rules**").

## RELIEF REQUESTED

5.      By this Motion, the Debtors request entry of an Interim Order, substantially in the form attached hereto as **Exhibit A**, and ultimately a final order (the "**Final Order**"), granting, among other things, the following relief:

    a.    <u>Cash Collateral Use</u>: authority to use the Debtors' cash that constitutes Prepetition Secured Parties' (as defined herein) "cash collateral," as that term is defined in section 363(a) of the Bankruptcy Code (the "**Cash Collateral**"), solely in accordance with the terms of the Interim Order;

    b.    <u>Adequate Protection</u>: approval of the Adequate Protection Liens, Adequate Protection Claims, Cash Payments of interest, payment of Fees and Expenses, Reporting Requirements, Independent Officer and Other Covenants (in each case, as defined herein) to be provided for the benefit of Natixis, in its capacities as "Agent" for each of the facilities under the Credit Agreement (as defined herein) (in such capacities together with its successors in such capacities, the "**Prepetition Agent**") and as Lender under the Credit Agreement, and the other Prepetition Secured Parties, to protect their interests in certain assets of the Debtors, including Cash Collateral (as more specifically defined below, the "**Prepetition Collateral**"), on account of the totality of the Collateral Diminution (as defined herein) of the Prepetition Collateral, if any, from and after the Petition Date;

    c.    <u>Modification of the Automatic Stay</u>: modification of the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the Interim Order;

    d.    <u>Waiver of Surcharge</u>: except to the extent of the Carve Out (as defined herein), and subject to entry of the Final Order, the waiver of all rights to surcharge any Prepetition Collateral or Collateral (as defined herein) under sections 506(c) or 552(b) of the Bankruptcy Code or any other applicable principle of equity or law;

    e.    <u>Waiver of Bankruptcy Rule 6004</u>: waiver of any applicable stay with respect to the effectiveness and enforceability of the Interim Order (including under Bankruptcy Rule 6004);

  f. <u>Interim Hearing</u>: entering the Interim Order without holding a hearing, or, in the alternative, scheduling an interim hearing (the "**Interim Hearing**") on January 9, 2019, 10:00 A.M. (EST) to consider the relief sought in this Motion and entry of the Interim Order;[3] and

  g. <u>Final Hearing</u>: scheduling of a final hearing (the "**Final Hearing**"), pursuant to Bankruptcy Rule 4001 and Local Rule 4001-2, to be held on February 4, 2020 at 10:00 a.m. (prevailing Eastern Time), to consider entry of the Final Order.

## RULE 4001-2 CONCISE STATEMENT[4]

6. In accordance with Bankruptcy Rules 4001(b) and (d) and Local Rule 4001-2(a), the below charts summarize the significant terms of the Interim Order. The Debtors believe that the following provisions of the Interim Order are justified and necessary in the context and circumstances of these cases:

| Material Term | Summary of Material Terms | Provision |
| --- | --- | --- |
| <u>Use</u>: | For working capital and general corporate purposes as provided for by the terms and conditions of the Interim Order and as contained in the Approved Budget, attached as **Exhibit 1** to the Interim Order. | pg. 9 |
| <u>Adequate Protection</u>: | The Prepetition Agent is entitled, pursuant to sections 361, 362, and 363(e) of the Bankruptcy Code, to adequate protection of its interests in the Prepetition Collateral on account of the totality of the diminution in value of the Prepetition Collateral, if any, from and after the Petition Date in accordance with section 506(a) of the Bankruptcy Code arising from the imposition and enforcement of the automatic stay and the Debtors' use or disposition of the Prepetition Collateral, as the case may be (each such diminution, a "**Collateral Diminution**"). | pg. 10-12 |
| | <u>Adequate Protection Liens</u>. To the extent of any Collateral Diminution of its respective interests in the Prepetition Collateral, and subject to the Carve Out, the Prepetition Agent, for the benefit of the Prepetition Secured Parties, shall have a valid, binding, continuing, enforceable, fully-perfected first priority senior (except as otherwise provided for in the Interim Order) security interest in and lien on (the "**Adequate Protection Liens**") the Prepetition Collateral and all other of the Debtors' now owned and hereafter-acquired real and personal property pursuant to sections 361 and 363 of the Bankruptcy Code, excluding avoidance or other actions arising | pg. 10 |

---

[3] In an abundance of caution, the Debtors intend to file an attorney declaration seeking entry of an order setting a hearing to consider the Interim Order on January 9, 2020 at 10:00 a.m.
[4] Capitalized terms not defined in the Rule 4001-2 statement shall have the meanings ascribed to them in the Interim Order.

| Material Term | Summary of Material Terms | Provision |
|---|---|---|
| | under chapter 5 of the Bankruptcy Code, except the proceeds of any such avoidance actions, subject to entry of a Final Order (all property identified in this paragraph being collectively referred to as the "**Collateral**"); and | |
| | Adequate Protection Claims. To the extent of any Collateral Diminution of its respective interests in the Prepetition Collateral, and subject to the Carve Out, the Prepetition Agent, for the benefit of the Prepetition Secured Parties, is hereby granted, an allowed administrative expense claim pursuant to section 507(b) of the Bankruptcy Code against each of the Debtors on a joint and several basis with the priority set forth in section 507(b) of the Bankruptcy Code (the "**Adequate Protection Claims**"), which administrative claim shall have recourse to and be payable from all prepetition and postpetition property of the Debtors, excluding the Carve Out, and including without limitation, subject to entry of a Final Order, the proceeds or property recovered in respect of any Avoidance Actions; and | pg. 10-11 |
| | Cash Payments: On each Interest Payment Date (as defined in the Credit Agreement), the Debtors shall pay the Prepetition Agent for the ratable benefit of the Prepetition Secured Parties an amount equal to the interest due under the Credit Agreement for the relevant Interest Period (as defined in the Credit Agreement). The rights of all parties are reserved as to whether payments made by the Debtors pursuant to this paragraph 4(c) of the Interim Order constitute payments of principal, interest or otherwise pursuant to section 506(b) of the Bankruptcy Code. | pg. 11 |
| | Fees and Expenses: The Debtors shall pay in cash on a current basis all outstanding prepetition and all post-petition reasonable and documented out-of-pocket fees and expenses of the professional advisors of the Prepetition Secured Parties (including, but not limited to, the expenses and disbursements of counsel and other third-party consultants, including financial advisors). None of such fees, costs, expenses, or other amounts shall be subject to sections 327, 328, 329 or 331 of the Bankruptcy Code, any Court approval or any U.S. Trustee guidelines, and no recipient of any such payment shall be required to file with respect thereto any interim or final fee application with this Court; provided, however, that such professionals must provide written invoices to the Debtors and copies of any such invoices shall be provided to the Office of the United States Trustee for Region 2 (the "**U.S. Trustee**"). The rights of all parties are reserved as to whether payments made by the Debtors pursuant to this paragraph 4(d) of the Interim Order constitute payments of principal, interest or otherwise pursuant to section 506(b) of the Bankruptcy Code. | pg. 11 |
| | Reporting Requirements: The Debtors shall comply with the reporting requirements set forth in Article 19 of the Credit Agreement, including without limitation, Sections 1, 3, 4, 8, and 15 thereof, and shall provide the following additional reporting to the Prepetition Agent (subject to any applicable limitations set forth below, and it being understood that any information shared with the | pg. 11-12 |

5

| Material Term | Summary of Material Terms | Provision |
|---|---|---|
| | Prepetition Agent may also be shared by the Prepetition Agent with the Prepetition Secured Parties): | |
| | (i) At the times specified in paragraph 3(c) of the Interim Order, the Variance Report required by paragraph 3(c) of the Interim Order; | |
| | (ii) A copy of any business plan approved by the Debtors' current board of directors as soon as reasonably practicable following such approval, together with a reconciliation to the prior business plan; | |
| | (iii) In-person or teleconference presentations by the Debtors and/or their advisors to the Prepetition Secured Parties and their advisors, at such times as the Prepetition Agent may reasonably request in writing (including via electronic mail), and at mutually agreeable places (to the extent such presentations are in-person); and | |
| | (iv) On or before the 5th business day before the end of the current Budget Period, a budget for the successive calendar month thereafter, in each case substantially in the form of the Approved Budget (each, a "**Proposed Budget**"), which Proposed Budget (including any subsequent revisions to any such Proposed Budget), upon written approval by the Prepetition Agent, acting at the direction of the Required Lenders, and shall become the Approved Budget effective as of the last day of the current Budget Period provided the notice requirements in paragraph 3(d) of the Interim Order are satisfied. | |
| | <u>Independent Officer</u>: Upon written request from the Prepetition Agent, the Debtors shall promptly seek an order appointing a chief restructuring officer and/or other independent officer acceptable to the Prepetition Agent, as applicable, in each case for the Debtors, with the terms and substance of such order and appointment acceptable to the Prepetition Agent. | pg. 12 |
| | <u>Other Covenants</u>: The Debtors shall maintain their cash management arrangements in a manner consistent with this Court's December 27, 2019 order granting the Debtors' cash management motion. | pg. 12 |
| <u>Carve Out</u>: | (a) As used in the Interim Order, the term "Carve Out" shall mean the sum of (i) all fees required to be paid to the Clerk of the Bankruptcy Court and the U.S. Trustee pursuant to 28 U.S.C. § 1930(a) and (ii) all allowed unpaid fees and disbursements included in the Approved Budget (whether allowed by interim order, final order, procedure order or otherwise) (the "**Allowed Professional Fees**") and incurred by professionals retained by the Debtors that are incurred at any time before delivery of written notice by Prepetition Agent to the Debtors, counsel of the Debtors, the U.S. Trustee, and counsel to any committee, stating that a Termination Date or | pg. 13-14 |

6

| Material Term | Summary of Material Terms | Provision |
|---|---|---|
| | Termination Event has occurred and is continuing and that the Post-Carve Out Notice Cap has been triggered (a "**Carve Out Notice**"), and (iii) the Allowed Professional Fees of the professionals retained by the Debtors and, subject to the limitations set forth in the Interim Order, any professionals retained by any statutory committee appointed in the Cases, if any (a "**Committee**"), whose retention is approved by a final order of this court in each case, incurred on or after the first business day following delivery of the Carve Out Notice in an aggregate amount not to exceed $100,000 (the "**Post-Carve Out Notice Cap**"), and (iv) reasonable fees and expenses incurred by a chapter 7 trustee under section 726(b) of the Bankruptcy Code in an amount not to exceed $25,000. Notwithstanding anything to the contrary in the Interim Order, the Allowed Professional Fees payable from the Carve Out shall be limited to the lesser of (x) the allowed amount of such Allowed Professional Fees and (y) the Approved Budgeted amounts for the applicable professional set forth in the professional fee schedule included in the Approved Budget; *provided*, that in no way shall the Carve Out or the Budget or any of the foregoing be construed as a cap or limitation on the amount of Professional Fees due and payable by the Debtors or that may be allowed by this Court at any time.<br><br>(b) Any payment or reimbursement of Allowed Professional Fees made prior to the delivery of the Carve Out Notice shall not reduce the Carve Out. Any payment or reimbursement of Allowed Professional Fees made to any Professional Persons on or after the delivery of the Carve Out Notice shall permanently reduce the Carve Out on a dollar-for-dollar basis. For the avoidance of doubt, the funding or payment of the Carve Out from Cash on hand or other available Cash shall not reduce Prepetition Secured Indebtedness.<br><br>(c) Notwithstanding anything in the Interim Order to the contrary, no portion of the Carve Out or any other Prepetition Collateral or Collateral, shall be used for professional fees and expenses (i) incurred by any party that is not a Debtor, or (ii) subject to paragraph 20, to investigate, challenge, object to, contest, or raise any defense to, the validity, security, perfection, priority, extent or enforceability of any amount due under or the liens or claims granted under or in connection with the Finance Documents. | |
| <u>Termination Date</u> | The Debtors' ability to use Cash Collateral pursuant to the Interim Order shall end on the Termination Date, without further court proceedings on the earliest of the following Termination Events, among others:<br><br>(i) the passing of 5:00 p.m. (prevailing Eastern Time) on February 4, 2020, unless extended with the written consent of the Prepetition Agent, (ii) the effective date of a confirmed plan of reorganization in the Chapter 11 Cases, (iii) any Project Document (as defined in the Credit Agreement), including, but not limited to, the MSA, is modified, amended, restated, supplemented, assumed, rejected or terminated, in each case, without the written consent of the Prepetition Agent, (iv) the entry of an order of this Court approving | pg. 15-17 |

| Material Term | Summary of Material Terms | Provision |
|---|---|---|
| | the terms of any debtor in possession financing for any of the Debtors; and (v) the date of a material breach by a Debtor under the Interim Order including a failure to adhere to the Approved Budget | |

## DESCRIPTION OF THE SECURED DEBT

7. As of the Petition Date, the Debtors have debt in the aggregate principal amount of not less than $149,194,360 outstanding pursuant to the Finance Documents (as defined below), plus any accrued interest, fees, letters of credit, and other amounts that may be due and payable thereunder (the "**Prepetition Secured Indebtedness**"). The Prepetition Secured Indebtedness was incurred pursuant to the facilities under that certain Amended and Restated Facilities Agreement, dated September 15, 2015 (as amended, restated, supplemented or otherwise modified from time to time, the "**Credit Agreement**," and together with all other documentation executed in connection therewith, including, without limitation, the Master Accounts Agreement (as defined herein and in the Credit Agreement), the Offshore Security Agreement (as defined in the Credit Agreement) and all other Finance Documents (as defined in the Credit Agreement), collectively, the "**Finance Documents**"), by and between, among others, Seabras Bermuda, as Borrower, Seabras USA, Seabras 1 Brasil Ltda., and Seabras 1 Holdings Brasil Ltda., as Guarantors, the Prepetition Agent, the lenders from time to time party thereto (such lenders, the "**Lenders**"), and each of the other Secured Parties (as defined in the Credit Agreement) (the Prepetition Agent, the Lenders, and other Secured Parties, collectively, the "**Prepetition Secured Parties**").

8. Pursuant to the Offshore Security Agreement and all other Security Documents (as defined in the Credit Agreement), the Debtors granted senior security interests in, and continuing, valid, binding, enforceable and perfected first priority liens on the Prepetition Collateral to and/or for the benefit of the Prepetition Secured Parties (the "**Prepetition Liens**").

As described in Section 2.1 of the Offshore Security Agreement, the Prepetition Collateral includes any interest in, among other things, all Accounts, Equipment, Goods, Inventory and Fixtures (including, without limitation, all of the foregoing that constitute all or any part of the Cable System), Letters of Credit and Letter-of-Credit Rights, Investment Property, Intellectual Property, Commercial Tort Claims, General Intangibles, Contract Rights, Assigned Insurance Policies, Securities Accounts and Deposit Accounts, Supporting Obligations, books and records relating to the Collateral of the Debtors, in or upon which a Lien, Mortgage, deed of trust, or other security interest has been granted in favor or for the benefit of the Prepetition Secured Parties in connection with, pursuant to, or under the applicable Finance Documents that existed as of the Petition Date and, subject to section 552 of the Bankruptcy Code, postpetition proceeds, products, offspring, rents, and profits. For the avoidance of doubt, the Prepetition Collateral excludes, as described in Section 2.2 of the Offshore Security Agreement, any Excluded Assets (as defined therein).

## BASIS FOR RELIEF

9. Under 11 U.S.C. § 363(c)(2), a debtor may use cash collateral if each entity that has an interest in such cash collateral consents or if the court, after notice and a hearing, authorizes the use of the cash collateral. Pursuant to 11 U.S.C. § 363(c)(3), the court must condition a debtor's use of cash collateral as is necessary to provide adequate protection of the interest in the cash collateral claimed by a party.

10. At a hearing on a debtor's motion for the use of cash collateral, the debtor bears the burden of proof on the issue of adequate protection, and the party claiming an interest in the cash collateral bears the burden of proof on the issue of the validity, priority, or extent of the lien.

11. Immediate access to the Cash Collateral is necessary for, without limitation, (a) the continued smooth operation of the Debtors' business, (b) payment of a management fee in

accordance with the MSA (as defined herein), and (c) satisfaction of administrative expenses incurred in connection with the commencement of these Cases. Moreover, the use of Cash Collateral will stabilize the Debtors' operations and revenue by paying ordinary, postpetition operating expenses, and any court approved prepetition expenses that may be at issue.

**A.     In Order to Continue Operating, The Debtors Need To Make Use Of The Cash Collateral.**

12.    The continuation of the Debtors' operations presents the best opportunity for the Prepetition Secured Parties to receive the greatest recovery on account of their claims. Accordingly, the Debtors submit that use of the Cash Collateral will allow the Debtors to continue their operations, preserve the Prepetition Secured Parties' collateral and thereby protect the Prepetition Secured Parties' interests. Courts have consistently recognized that the preservation of the going concern value of secured lenders' collateral constitutes adequate protection of such creditors' interest in the collateral. *See, e.g., In re Pursuit Athletic Footwear, Inc.*, 193 B.R. 713, 716 (Bankr. D. Del. 1996) (holding that if there is no actual diminution of value of collateral and the debtor can operate profitably postpetition, then the secured creditor is adequately protected); *see also In re 499 W. Warren St. Assocs., Ltd. P'ship,* 142 B.R. 53, 56 (Bankr. N.D.N.Y. 1992) (finding a secured creditor's interest in collateral adequately protected when cash collateral was applied to normal operating and maintenance expenditures on the collateral property); *In re Stein,* 19 B.R. 458, 460 (Bankr. E.D. Pa. 1982) (creditors' secured position would be enhanced by the continued operation of the debtors' business); *In re Aqua Assocs.*, 123 B.R. 192, 196 (Bankr. E.D. Pa. 1991) ("The important question, in determining whether the protection to a creditor's secured interest is adequate, is whether that interest, whatever it is, is being unjustifiably jeopardized.") (citation omitted).

13. The Debtors have an immediate and critical need to use the Prepetition Secured Parties' Cash Collateral to continue the Debtors' ordinary course business operations, make upcoming payments to vendors, and to maintain the value of the Debtors' bankruptcy estates. Absent entry of the Interim Order, the Debtors' estates and reorganization efforts will be immediately and irreparably harmed.

**B.     The Debtors Require Use Of Cash Collateral To Pay The Management Fee.**

14. As presently organized, neither of the Debtors are true operating companies. The Debtors maintain no employees and do not conduct any commercial operations. Rather, Seaborn Management, Inc. ("**Seaborn Manager**"), a non-Debtor affiliate, pursuant to that certain Management Services Agreement dated December 18, 2015 (as amended and/or novated, the "**MSA**"), performs substantially all of the Debtors' business and commercial functions and pays the operational expenses of the Debtors (as well as certain of their affiliates).

15. Pursuant to the MSA, Seaborn Manager provides a variety of operational and commercial services including, without limitation: (i) designing, planning and managing substantially all work relating to or arising from the Seabras-1 network infrastructure, (ii) performing operations, sales and general administrative management functions, (iii) overseeing reorganization, bankruptcy proceedings, dissolution or winding up of the Debtors, (iv) management of bank accounts and (v) arranging for and managing commercially reasonable insurance coverage.

16. In order to receive the benefit of these critical management services, the Debtors must act in accordance with the MSA and pay to Seaborn Manager the management fee. Without authority to use Cash Collateral, the Debtors will not be able to make such payments and, as a result, will be unable to function as a going concern. This will also make it near impossible to proceed with a plan of reorganization. Accordingly, authority to use Cash Collateral is necessary

to avoid the shutdown of the Debtors' business, and will be in the best interests of the Debtors and their estates.

## C. The Prepetition Secured Parties Will Be Adequately Protected.

17. Through this Motion, the Debtors intend to provide adequate protection, to the extent of the aggregate Collateral Diminution of the Cash Collateral from and after the Petition Date, to the Prepetition Secured Parties, for the use of the Cash Collateral by:

a. maintaining the going-concern value of the collateral by using the Cash Collateral to continue to operate the business and administer these Cases;

b. <u>Adequate Protection Liens</u>: providing the Prepetition Secured Parties with postpetition first priority liens, subject to the Carve Out, on the Prepetition Collateral and all other of the Debtors' now owned and hereafter-acquired real and personal property pursuant to sections 361 and 363 of the Bankruptcy Code, excluding avoidance or other actions arising under chapter 5 of the Bankruptcy Code, except the proceeds of any such avoidance actions, subject to the Carve Out and entry of a Final Order;

c. <u>Adequate Protection Claims</u>: providing to the Prepetition Secured Parties an allowed administrative expense claim pursuant to section 507(b) of the Bankruptcy Code and subject to the Carve Out against each of the Debtors on a joint and several basis with the priority set forth in section 507(b) of the Bankruptcy Code, which administrative claim shall have recourse to and be payable from all prepetition and postpetition property of the Debtors, excluding the Carve Out, and including without limitation, subject to entry of a Final Order, the proceeds or property recovered in respect of any Avoidance Actions;

d. <u>Cash Payments</u>: paying the Prepetition Agent, on each Interest Payment Date (as defined in the Credit Agreement) for the ratable benefit of the Prepetition Secured Parties an amount equal to the interest due under the Credit Agreement for the relevant Interest Period (as defined in the Credit Agreement);

e. <u>Fees and Expenses</u>: paying in cash on a current basis all outstanding prepetition and all post-petition reasonable and documented out-of-pocket fees and expenses of the professional advisors of the Prepetition Secured Parties arising under the Credit Agreement pursuant to the terms of the Interim Order; and

   f. <u>Reporting Requirements</u>: complying with the reporting requirements set forth in Article 19 of the Credit Agreement, including without limitation, Sections 1, 3, 4, 8, and 15 thereof, and complying with the additional reporting to the Prepetition Agent as set forth in the Interim Order.

   g. <u>Independent Officer</u>: Upon written request from the Prepetition Agent, the Debtors shall promptly seek an order appointing a chief restructuring officer and/or other independent officer, as applicable, in each case for the Debtors, with the terms and substance of such order and appointment acceptable to the Prepetition Agent; and

   h. <u>Other Covenants</u>: The Debtors shall maintain their cash management arrangements in a manner consistent with the Court's December 27, 2019 order.

18. The Debtors have satisfied the requirement of section 363(e) to use cash collateral by providing the Prepetition Secured Parties with Adequate Protection Liens, Adequate Protection Claims, Cash Payments of interest, payments for Fees and Expenses and by complying with the Reporting Requirements, the mandate to appoint a chief restructuring officer or independent officer at the request of the Prepetition Agent and complying with the other covenants proposed by the Prepetition Agent. Accordingly, the Debtors have ensured that the value of the Cash Collateral will be preserved for the duration of these Cases. *See, e.g., In re 495 Cent. Park Ave. Corp.*, 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992) ("The goal of adequate protection is to safeguard the secured creditor from diminution in the value of its interest during the chapter 11 reorganization); *In re Beker Indus. Corp.*, 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986) (". . . [Adequate protection's] focus is protection of the secured creditor from diminution in the value of its collateral during the reorganization process.") (citation omitted). Accordingly, this Court should authorize the Debtors to use the Cash Collateral under section 363(c)(2) of the Bankruptcy Code.

**D. Failure To Obtain Immediate Interim Access To Cash Collateral Would Cause Immediate And Irreparable Harm and Entry of the Interim Order Without a Hearing Is Warranted.**

19. Pursuant to Bankruptcy Rule 4001(d)(4), if there is an agreement related to use of the Cash Collateral, this Court may approve the agreement without further notice if it is determined that the motion was sufficient to afford reasonable notice of the material provisions of the agreement and opportunity for a hearing. *See* Rule 4001(d)(4). Here, the Debtors have negotiated the Interim Order with counsel to the Prepetition Agent. Through the parties' efforts, the proposed Interim Order is entirely consensual as between the Prepetition Agent, on behalf of itself and the other Prepetition Secured Parties. Additionally, the Debtors have sent this Motion, the proposed Interim Order, and the Approved Budget to the U.S. Trustee and Seabras Group, LLC ("**Seabras Group**"). Based on conversations with the U.S. Trustee, the Debtors do not believe that the U.S. Trustee has any issues with the proposed Interim Order. Seabras Group has raised several questions with respect to the Approved Budget, which as of the time of this filing, the Debtors are working in good faith to address. As such, the Debtors submit that entry of the Interim Order is warranted, cost-saving to the Debtors' estates, and appropriate in these circumstances.

20. In the alternative, Bankruptcy Rules 4001(b)(2) and Local Rule 4001-2(c), provide that, upon request, this Court is empowered to conduct a preliminary expedited hearing on this Motion and authorize use of the cash collateral to the extent necessary to avoid immediate and irreparable harm to the Debtors' estates. *See* Bankruptcy Rule 4001(b)(2); Local Rule 4001-2(c). In the event this Court is inclined to hold a hearing on this Motion, an expedited hearing is warranted as the Debtors will need to start making payments to various vendors necessary for the steady operation of their business. Similarly, the Debtors will need to have access to cash collateral to pay the management fee pursuant to the MSA. As described in the First Day Declaration, Seaborn Manager is essential to the operations of the Debtors and is responsible for duties that cover substantially all of the Debtors' internal operations. Moreover, the Debtors will need to start

making payments becoming due to vendors as soon as January 13, 2020. Accordingly, immediate relief is hereby requested and the Debtors submit it is fully warranted in these circumstances. Without the use of Cash Collateral the Debtors will be unable to operate their business or otherwise fund these Chapter 11 Cases, and, ultimately, the Debtors' estates will suffer immediate and irreparable harm to the detriment of all creditors and other parties-in-interest. Entry of the Interim Order on an expedited basis will send a positive message to the Debtors' vendors, contractual counterparties and other parties-in-interest, and will provide much needed stability to the Debtors operations.

21. For the foregoing reasons, the Debtors respectfully request (a) immediate entry of the Interim Order without a hearing pursuant to Bankruptcy Rule 4001(d)(4), or, in the alternative, (b) consideration of this Motion solely to the extent of the relief requested in the Interim Order at a hearing to be held on January 9, 2020 at 10:00 A.M. (EST), pursuant to Bankruptcy Rule 4001(b)(2). The Debtors request that they be authorized to serve a copy of the signed Interim Order, which fixes the time and date for the filing of objections, if any, by first class mail upon the Notice Parties listed below. The Debtors further request that this Court consider such notice of the Final Hearing to be sufficient notice under Bankruptcy Rule 4001(c)(2).

**REQUEST FOR FINAL HEARING**

22. Pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2), the Debtors request that this Court set February 4, 2020 at 10:00 a.m. (prevailing Eastern Time) as a final hearing for consideration of entry of the Final Order.

**WAIVER OF BANKRUPTCY RULE 6004(h)**

23. To implement the foregoing successfully, the Debtors also request that this Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). As described above, the relief requested in the Motion is necessary for the Debtors to operate without interruption and to preserve value for its estate. Accordingly, the Debtors respectfully request that this Court waive the fourteen day stay imposed by Bankruptcy Rule 6004(h), to the extent it applies, as the exigent nature of the relief sought herein justifies immediate relief.

**RESERVATION OF RIGHTS**

24. Nothing contained herein is intended to be or shall be construed as (a) an admission as to the validity of any claim against the Debtors, (b) a waiver of the Debtors' or any appropriate party-in-interest's rights to dispute any claim, or (c) an approval or assumption of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code. Likewise, if this Court grants the relief sought herein, any payment made pursuant to the Interim Order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of the Debtors' right to dispute such claim subsequently.

**NOTICE**

25. Notice of this Motion will be provided to: (a) the U.S. Trustee, (b) counsel to the Prepetition Agent, (c) the Debtors' twenty (20) largest unsecured creditors on a consolidated basis, (d) the Internal Revenue Service, (e) counsel to Seabras Group (f) the United States Attorney for the Southern District of New York, and (g) any party that has requested notice and service of papers pursuant to Bankruptcy Rules 2002 and 9010(b), and such notice is sufficient for purposes of the Interim Hearing.

## NO PRIOR REQUEST

26. No prior request for the relief sought herein has been made to this Court or any other court.

WHEREFORE the Debtors respectfully request entry of an order granting the relief requested herein and such other and further relief as this Court may deem just and appropriate.

Dated: January 7, 2020
      New York, New York

BRACEWELL LLP

*/s/ Robert G. Burns*
Robert G. Burns
Mark E. Dendinger
Joshua D. Neifeld (*pro hac vice* pending)
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 508-6100
Facsimile: (212) 508-6101

*Proposed Counsel for Debtors
and Debtors in Possession*