**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 11 |
| Seabras 1 USA, LLC *et al.*, | Case No. 19-14006 (SMB) |
| Debtors.[1] | (Jointly Administered) |

**FOURTH INTERIM ORDER UNDER BANKRUPTCY CODE SECTIONS 105(a), 361, 362, 363, 503, AND 507, BANKRUPTCY RULES 4001 AND 9014 (I) AUTHORIZING DEBTORS TO USE CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES, AND (III) SCHEDULING A FINAL HEARING**

Upon the motion (the "**Motion**") of the above-referenced debtors, as debtors in possession (collectively, the "**Debtors**") in the above-captioned cases (the "**Cases**"), pursuant to sections 105, 361, 362, 363, 503 and 507 of title 11 of the United States Code, 11 U.S.C. §§101-1532 (the "**Bankruptcy Code**"), Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the local rules of this Court (the "**Local Rules**"), seeking, among other things:

    (a)    authorization for the Debtors, pursuant to sections 105, 361, 362, 363, 503 and 507 of the Bankruptcy Code to (i) use cash collateral, as such term is defined in section 363(a) of the Bankruptcy Code, and all other Prepetition Collateral (as defined herein), solely in accordance with the terms of the interim order (the "**Interim Order**"), and (ii) provide adequate protection to Natixis, in its capacities as "Agent" for each of the Facilities under the Credit Agreement (each terms as defined herein) (in such capacities, together with its successors in such capacities,

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of their respective tax identification numbers, are Seabras 1 USA, LLC (0027) and Seabras 1 Bermuda Ltd. (7149). The Debtors' principal offices are located at 600 Cummings Center, Suite 268Z, Beverly, MA 01915.

the "**Prepetition Agent**") and as Lender under the Credit Agreement (each as defined herein), and the other Prepetition Secured Parties (as defined herein);

(b)    modification of the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the Interim Order;

(c)    except to the extent of the Carve Out (as defined herein), and subject to entry of the Final Order (as defined herein), the waiver of all rights to surcharge any Prepetition Collateral or Collateral (as defined herein) under sections 506(c) or 552(b) of the Bankruptcy Code or any other applicable principle of equity or law;

(d)    that this Court hold an interim hearing (the "**Interim Hearing**") to consider the relief sought in the Motion and entry of the proposed Interim Order;

(e)    that this Court schedule a final hearing (the "**Final Hearing**") to consider entry of a final order granting the relief requested in the Motion on a final basis (the "**Final Order**");

(f)    waiver of any applicable stay with respect to the effectiveness and enforceability of the Interim Order (including a waiver pursuant to Bankruptcy Rule 6004(h));

and the Court having held interim hearings on January 10, 2020, February 4, 2020, and February 13, 2020 (the "**Interim Hearings**") and thereafter entered interim orders (ECF Dkt. No. 55; ECF Dkt. No. 110; ECF Dkt. No. 124) (the "**Interim Orders**") granting, on an interim basis, the relief sought in the Motion as set forth in the Interim Orders; and the Court having considered the entry of this interim order (the "**Fourth Interim Order**"), notice of the Motion and the relief sought therein on an interim basis having been given by the Debtors as set forth in this Fourth Interim Order; and the Court having considered the Approved Budget (as defined herein) filed and served by the Debtors, the Declaration of Roger Kuebel, Chief Financial Officer of Seaborn Management, Inc., in support of Chapter 11 Petitions and First Day Motions (ECF Dkt. No. 2) (the "**First Day Declaration**"), offers of proof, evidence adduced, and the statements of counsel at the Interim Hearings; and it appearing to the Court that granting the relief sought in the Motion on the terms and conditions herein contained is necessary and essential to enable the Debtors to preserve the value of the Debtors' businesses and assets and that such relief is fair and reasonable and that

entry of this Fourth Interim Order is in the best interest of the Debtors and their respective estates and creditors; and due deliberation and good and sufficient cause having been shown to grant the relief sought in the Motion on an interim basis,

**THE COURT HEREBY FINDS AND CONCLUDES AS FOLLOWS:**

A.      **Petition Date**.  On December 22, 2019, each of Seabras 1 USA, LLC and Seabras 1 Bermuda Ltd. filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Southern District of New York (the "**Court**").  Each Debtor has continued with the management and operation of its respective businesses and properties as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No committee, trustee or examiner has been appointed in the Cases.  The Cases are jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b).

B.      **Credit Agreement**.  Prior to the Petition Date, the Lenders made certain loans and extensions of credit pursuant to and in accordance with the terms and conditions of that certain Amended and Restated Facilities Agreement dated as of September 15, 2015 (as amended, restated, supplemented or otherwise modified from time to time, the "**Credit Agreement**," and together with all other documentation executed in connection therewith, including, without limitation, the Master Accounts Agreement (as defined in the Credit Agreement), the Offshore Security Agreement (as defined in the Credit Agreement) and all other Finance Documents (as defined in the Credit Agreement), collectively, the "**Finance Documents**"), by and between, among others, Seabras 1 Bermuda Ltd., as Borrower, Seabras 1 USA, LLC, Seabras 1 Brasil Ltda., and Seabras 1 Holdings Brasil Ltda., as Guarantors, the Prepetition Agent, the lenders from time to time party thereto (such lenders, the "**Lenders**"), and each of the other Secured Parties (as defined in the Credit Agreement) (the Prepetition Agent, the Lenders, and the other Secured Parties, collectively, the "**Prepetition Secured Parties**").  Certain of the loans made under the Credit Agreement are

covered by a credit insurance policy issued by COFACE (whose successor is Bpifrance Assurance Export).

     C.     **Debtors' Admissions With Respect to the Prepetition Secured Indebtedness**.

Subject to the limitations set forth in paragraph 21 of this Fourth Interim Order, the Debtors acknowledge, admit, represent, stipulate and agree that:

     i.     As of the Petition Date, the Debtors were justly and lawfully indebted and liable, without defense, counterclaim, recoupment or offset of any kind, to the Prepetition Secured Parties in the aggregate principal amount of not less than $149,194,360 outstanding pursuant to the Finance Documents, plus any accrued interest, fees, letters of credit, and other amounts that may be due and payable thereunder, including, but not limited to, attorney's and other professional fees and expenses that are chargeable or reimbursable under the Finance Documents and all other charges, indemnities and other costs and obligations incurred therewith, including any Obligation (as defined in the Credit Agreement) of any kind or nature, whether or not evidenced by any note, agreement or other instrument, whether or not contingent, whenever accrued, due, owing or chargeable in respect of any of the Debtors' obligations under the Finance Documents (collectively, the "**Prepetition Secured Indebtedness**").

     ii.     The Prepetition Secured Indebtedness constitutes legal, valid, and binding obligations of the Debtors, enforceable in accordance with its terms (other than in respect of the stay of enforcement arising under section 362 of the Bankruptcy Code), without objection, offset, defense, or counterclaim of any kind or nature.  No portion of the Prepetition Secured Indebtedness or any payments made to the Prepetition Secured Parties or applied to or paid on account of the obligations owing under the Finance Documents prior to the Petition Date is subject to any contest, avoidance, disallowance, reduction, recharacterization, recovery, subordination (whether equitable, contractual or otherwise), attachment, offset, Claim (as defined in the Bankruptcy Code), counterclaim, crossclaim, defense, impairment or challenge of any kind, nature, or description, pursuant to the Bankruptcy Code or other applicable law.  The Prepetition Secured Indebtedness constitutes allowed claims against the applicable Debtors' estates.  No claim or cause of action held by the Debtors or their estates exists against any of the Prepetition Secured Parties or their agents (in such capacity), whether arising under applicable state or federal law (including, without limitation, any recharacterization, subordination, avoidance or other claims arising under or pursuant to sections 105, 510 or 542 through 533 of the Bankruptcy Code), or whether arising under or in connection with any of the Finance Documents (or the transactions contemplated thereunder).

D. **Debtors' Admissions With Respect to Prepetition Collateral**. Subject to the limitations set forth in paragraph 21 of this Fourth Interim Order, the Debtors acknowledge, admit, represent, stipulate and agree that:

    i.    Pursuant to the Offshore Security Agreement and all other Security Documents (as defined in the Credit Agreement), the Debtors granted senior security interests in, and continuing, valid, binding, enforceable and perfected first priority liens on, certain assets of the Debtors (as more specifically defined below, the "**Prepetition Collateral**") to and/or for the benefit of the Prepetition Secured Parties (the "**Prepetition Liens**"). The Prepetition Collateral includes, as described in Section 2.1 of the Offshore Security Agreement, any interest in, among other things, all Accounts, Equipment, Goods, Inventory and Fixtures (including, without limitation, all of the foregoing that constitute all or any part of the Cable System), Letters of Credit and Letter-of-Credit Rights, Investment Property, Intellectual Property, Commercial Tort Claims, General Intangibles, Contract Rights, Assigned Insurance Policies, Securities Accounts and Deposit Accounts, Supporting Obligations, books and records relating to the Collateral of the Debtors, in or upon which a Lien, Mortgage, deed of trust, or other security interest has been granted in favor or for the benefit of the Prepetition Secured Parties in connection with, pursuant to, or under the applicable Finance Documents that existed as of the Petition Date and, subject to section 552 of the Bankruptcy Code, postpetition proceeds, products, offspring, rents, and profits. For the avoidance of doubt, the Prepetition Collateral excludes, as described in Section 2.2 of the Offshore Security Agreement, any Excluded Assets (as defined therein).

    ii.    The Prepetition Liens constitute valid, binding, enforceable, and perfected first priority security interests and liens in and on the Prepetition Collateral and are not subject to any contest, avoidance, disallowance, reduction, recharacterization, recovery, subordination (whether equitable, contractual or otherwise), attachment, offset, Claim, counterclaim, crossclaim, defense, impairment or challenge of any kind, nature, or description, pursuant to the Bankruptcy Code or other applicable law and are subject and subordinate only to, from and after entry of this Fourth Interim Order, the Carve-Out.

E. **Debtors' Admissions With Respect to Cash Collateral**. Subject to the limitations set forth in paragraph 21 of this Fourth Interim Order, the Debtors acknowledge, admit, represent, stipulate and agree that all of the Debtors' cash including all cash proceeds of the Prepetition Collateral, negotiable instruments, documents of title, securities cash equivalents, banking, checking or other deposit accounts with financial institutions as of the Petition Date or deposited

into banking, checking or other deposit accounts with financial institutions after the Petition Date

that is property of the Debtors constitutes "**Cash Collateral**" of the Prepetition Secured Parties

within the meaning of section 363(a) of the Bankruptcy Code.

   F.  **Releases by the Debtors**.  Subject to the limitations set forth in paragraph 21 of

this Fourth Interim Order, each of the Debtors and the Debtors' estates, on its own behalf and on

behalf of its past, present and future predecessors, successors, heirs, subsidiaries and assigns, to

the maximum extent permitted by applicable law hereby unconditionally, irrevocably and fully

forever waives, releases, remises, acquits, relinquishes and discharges each of the Prepetition

Secured Parties and each of their respective successors, assigns, affiliates, parents, subsidiaries,

partners, controlling persons, representatives, agents, attorneys, advisors, financial advisors,

consultants, professionals, officers, directors, members, managers, shareholders, and employees,

past, present and future, and their respective heirs, predecessors, successors and assigns, each in

their respective capacities as such (collectively, the "**Releasees**"), of and from any and all Claims,

counterclaims, demands, liabilities, responsibilities, disputes, remedies, indebtedness and

obligations, rights, assertions, allegations, suits, costs, expenses, fees, judgments, causes of action,

defenses or setoff rights of any kind or type, whether known, unknown, asserted, unasserted,

suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending or threatened arising prior

to the date of entry of this Fourth Interim Order, including, without limitation, (i) any so-called

"lender liability" or equitable subordination claims or defenses, (ii) any and all claims and causes

of action arising the Bankruptcy Code, and (iii) any and all claims and causes of action regarding

the validity, priority, perfection or avoidability of the liens or claims of the Prepetition Secured

Parties.

G.        **Need to Use Cash Collateral**.   A critical need exists for the Debtors to use the Cash Collateral, consistent with the Approved Budget, for working capital purposes, other general corporate purposes of the Debtors, and the satisfaction of costs and expenses of administering the Cases.  The ability of the Debtors to obtain liquidity through the use of the Cash Collateral is vital to the Debtors and their efforts to maximize the value of their assets.

H.        **Notice**.  Notice of the requested relief granted herein was provided by the Debtors to: (a) the Office of the United States Trustee for Region 2 (the "**U.S. Trustee**"), (b) counsel to the Prepetition Agent; (c) the Debtors' twenty (20) largest unsecured creditors on a consolidated basis, (d) the Internal Revenue Service, (e) counsel to Seabras Group, LLC; (f) the United States Attorney for the Southern District of New York; and (g) any party that has requested notice and service of papers pursuant to Bankruptcy Rules 2002 and 9010(b), and such notice is sufficient for purposes of this Fourth Interim Order.

I.        **Consent by Prepetition Secured Parties**.  The Prepetition Agent, at the direction of the Required Lenders (as defined in the Credit Agreement), consents to the Debtors' use of the Prepetition Collateral, including the Cash Collateral, in accordance with and subject to the terms and conditions provided for in this Fourth Interim Order.

J.        **Jurisdiction and Venue**.  The United States Bankruptcy Court for the Southern District of New York (this "**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.). This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought herein are Sections 105, 361, 362, 363, 507 and 552 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004, and 9014, and Rule 4001-1 of the Local Rules.

K.    **Relief Essential; Best Interest**.   The relief requested in the Motion (and as provided in this Fourth Interim Order) is necessary, essential and appropriate for the continued operation of the Debtors' businesses and the management and preservation of the Debtors' assets and the property of their estates.  It is in the best interest of the Debtors' estates that the Debtors be allowed to use the Cash Collateral under the terms hereof.  The Debtors have demonstrated good and sufficient cause for the relief granted herein.

L.    **Arm's-Length, Good Faith Negotiations**.  The terms of this Fourth Interim Order were negotiated in good faith and at arm's-length between the Debtors and the Prepetition Secured Parties.

**NOW, THEREFORE, UPON THE RECORD OF THE PROCEEDINGS HERETOFORE HELD BEFORE THIS COURT WITH RESPECT TO THE MOTION, THE EVIDENCE ADDUCED AT THE INTERIM HEARINGS, AND THE STATEMENTS OF COUNSEL THEREAT, IT IS HEREBY ORDERED THAT:**

1.    **Motion Granted.**  The Motion is granted on an interim basis to the extent set forth herein.  Any objections to the Motion with respect to the entry of this Fourth Interim Order that have not been withdrawn, waived or settled and all reservations of rights included therein, are hereby denied and overruled with prejudice.

2.    **Final Hearing.**  A final hearing on the relief requested in the Motion shall be held on February 27, 2020, at 10:00 a.m. (Prevailing Eastern Time).

3.    **Authorization to Use Cash Collateral; Budget Testing**.

(a)    Subject to the terms and conditions of this Fourth Interim Order, the Court hereby authorizes the Debtors' use of Cash Collateral during the period beginning with the Petition Date and ending on the earlier of 5:00 p.m. (prevailing Eastern Time) on February 29, 2020 and the Termination Date (as defined herein) solely and exclusively in a manner consistent with this Fourth Interim Order and the Approved Budget, and for no other purposes.

(b)    As used in this Fourth Interim Order: (i) "**Approved Budget**" means the budget attached as Exhibit 1 hereto and any proposed budget approved in accordance with this Fourth Interim Order, in each case, as may be modified from time to time with the prior written consent of the Prepetition Agent, acting at the direction of the Required Lenders (provided that

any such modified budget shall not take effect as the Approved Budget on less than two (2) days' notice to the U.S. Trustee and counsel to Partners Group Seabras, LLC) (ii) "**Budget Period**" means the monthly period set forth in the Approved Budget in effect at such time; *provided, however, that* the Budget Period in effect for February 20, 2020 through February 29, 2020 shall be as set forth in the Approved Budget attached as Exhibit 1 hereto.

(c)     The Debtors shall spend Cash Collateral solely in accordance with the Approved Budget on a line-by-line basis, subject to Permitted Deviations (as defined below). Permitted Deviations shall be tested on the 5th business day following the last day of each Budget Period (each such date, a "**Testing Date**"). On or before 5:00 p.m. (prevailing Eastern Time) on each Testing Date, the Debtors shall prepare and deliver to the Prepetition Agent, in form and substance reasonably satisfactory to the Prepetition Agent, a variance report for the immediately preceding Budget Period (the "**Variance Report**") setting forth: (i) the disbursements on a line-by-line basis of the Debtors, including line item detail on MSA (as defined in the First Day Declaration) expenditures during the applicable Budget Period, (ii) any variance (whether positive or negative, expressed as a percentage) on a line-by-line basis, for disbursements made during such Budget Period by the Debtors against the projected disbursements set forth in the applicable Approved Budget.

(d)     The Debtors shall not allow, during any Budget Period, the Debtors' actual cash expenses and disbursements during such Budget Period to be more than 110% of the projected cash expenses and disbursements for any particular line item for such Budget Period as set forth in the Approved Budget (such deviations from budgeted amounts, the "**Permitted Deviations**"); provided that the cash expenses and disbursements considered for determining compliance with this covenant shall exclude the Debtors' disbursements and expenses in respect of adequate protection payments pursuant to paragraph 4(c) of this Fourth Interim Order and professional fees of the Debtors and Prepetition Secured Parties during such Budget Period; *provided further that* the Debtors may carry forward budgeted but unused disbursements set forth in the Approved Budget during the current Budget Period solely for use in the immediately succeeding Budget Period, but no Budget Period thereafter unless set forth in a subsequent Approved Budget.

4.     **Adequate Protection for the Prepetition Secured Parties**. As adequate

protection of the interest of the Prepetition Secured Parties in the Prepetition Collateral, including

the Cash Collateral, the Prepetition Secured Parties are hereby granted the following adequate

protection to the extent of any Collateral Diminution (as defined herein):

(a)     **Adequate Protection Liens**. Pursuant to sections 361(2) and 363(c)(2), of the Bankruptcy Code and subject in all cases to the Carve-Out, effective as of the Petition Date and in each case perfected without the necessity of the execution by the Debtors (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages or other similar documents, or by possession or control, the Prepetition Agent is hereby granted, for the benefit of the Prepetition Secured Parties, to secure payment of an amount equal to the Collateral Diminution, a valid, binding, continuing, enforceable, fully-perfected first priority senior (except as otherwise provided in this paragraph 4(a) with respect to the Permitted Prior

Liens) security interest in and lien on (all such liens and security interests, the "**Adequate Protection Liens**") the Prepetition Collateral and all other of the Debtors' now owned and hereafter-acquired real and personal property, assets and rights of any kind or nature, wherever located, whether encumbered or unencumbered, including, without limitation, all prepetition and postpetition property of the Debtors' estates, and the proceeds, products, rents and profits thereof, whether arising from section 552(b) of the Bankruptcy Code or otherwise, including, without limitation, all equipment, all inventory (including all raw materials and work in process therefore, finished goods thereof, and materials used or consumed in the manufacture or production thereof), all goods, all accounts, Cash, payment intangibles, deposit accounts, accounts receivable, other rights to payment, general intangibles, contracts, servicing rights, servicing receivables, securities, chattel paper, all interest rate hedging agreements, currency hedging agreements and similar agreements, owned real estate, real property leaseholds, fixtures, patents, copyrights, trademarks, trade names, rights under license agreements and other intellectual property, claims and causes of action and all proceeds of the foregoing (excluding avoidance actions under chapter 5 of the Bankruptcy Code ("**Avoidance Actions**"), but including proceeds of Avoidance Actions, subject to entry of a Final Order and to the extent provided therein) (all property identified in this paragraph 4(a) being collectively referred to as the "**Collateral**"), subject only to valid, perfected and enforceable prepetition liens (if any) which are senior to the Prepetition Secured Parties' liens or security interests as of the Petition Date or to valid and unavoidable liens in existence immediately prior to the Petition Date that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code, and that are senior to the Prepetition Secured Parties' liens or security interests as of the Petition Date (such liens, the "**Permitted Prior Liens**"), in which case the Adequate Protection Liens shall be immediately junior in priority to such Permitted Prior Liens.

(b)     **Adequate Protection Claims**.  Effective as of the Petition Date, and subject only to the Carve-Out, an allowed administrative expense claim in the amount of any Collateral Diminution arising pursuant to section 507(b) of the Bankruptcy Code against each of the Debtors on a joint and several basis with the priority set forth in Section 507(b) of the Bankruptcy Code (the "**Adequate Protection Claims**"), which administrative claim shall have recourse to and be payable from all prepetition and postpetition property of the Debtors, excluding the Carve-Out, and including, without limitation, subject to entry of a Final Order and to the extent provided therein, the proceeds or property recovered in respect of any Avoidance Actions.  For avoidance of doubt, the Adequate Protection Claims shall include amounts due to the Prepetition Secured Parties under Section 16.3 of the Credit Agreement for all out-of-pocket expenses incurred by any Prepetition Secured Party (including the fees, charges and disbursements of any and all counsels appointed by any Agent or Security Agent) incurred in connection with these Cases.

(c)     **Cash Payments**.  On each Interest Payment Date (as defined in the Credit Agreement), the Debtors shall pay the Prepetition Agent for the ratable benefit of the Prepetition Secured Parties an amount equal to the interest due under the Credit Agreement for the relevant Interest Period (as defined in the Credit Agreement).  The rights of all parties are reserved as to whether payments made by the Debtors pursuant to this paragraph 4(c) constitute payments of principal, interest or otherwise pursuant to section 506(b) of the Bankruptcy Code.

(d)     **Fees and Expenses**.  The Debtors shall pay in cash on a current basis all outstanding prepetition and all post-petition reasonable and documented out-of-pocket fees and

expenses of the professional advisors of the Prepetition Secured Parties (including, but not limited to, the expenses and disbursements of counsel and other third-party consultants, including financial advisors). None of such fees, costs, expenses or other amounts shall be subject to sections 327, 328, 329 or 331 of the Bankruptcy Code, any Court approval or any U.S. Trustee guidelines, and no recipient of any such payment shall be required to file with respect thereto any interim or final fee application with this Court; provided, however, that such professionals must provide written invoices to the Debtors and copies of any such invoices shall be provided to the U.S. Trustee. If any of the Debtors or the U.S. Trustee objects to the reasonableness of the fees and expenses, and such objection cannot be resolved within ten (10) calendar days of receipt of such invoices, the Debtors or the U.S. Trustee, as the case may be, shall file with the Court and serve on the applicable professional (with a copy to the Debtors) an objection limited to the reasonableness of such fees and expenses (a "**Fee Objection**"). The Debtors shall pay the fees and expenses of the applicable professional in accordance with the terms and conditions of this Fourth Interim Order within fifteen (15) calendar days after receipt of the applicable invoice (x) the full amount invoiced if no Fee Objection has been timely filed, and (y) the undisputed fees, costs, and expenses reflected on any invoice to which a Fee Objection has been timely filed, in each case, regardless of whether such amounts are in excess of the amounts set forth in the Approved Budget. All such fees, costs, expenses and other amounts owed or payable hereunder shall be secured by the Adequate Protection Liens and afforded all of the priorities and protections afforded to the Prepetition Secured Parties under this Fourth Interim Order. The rights of all parties are reserved as to whether payments made by the Debtors pursuant to this paragraph 4(d) constitute payments of principal, interest or otherwise pursuant to section 506(b) of the Bankruptcy Code.

(e) **Reporting Requirements**. The Debtors shall comply with the reporting requirements set forth in Article 19 of the Credit Agreement, including without limitation, Sections 1, 3, 4, 8, and 15 thereof, and shall provide the following additional reporting to the Prepetition Agent (subject to any applicable limitations set forth below, and it being understood that any information shared with the Prepetition Agent may also be shared by the Prepetition Agent with the Prepetition Secured Parties):

(i) At the times specified in paragraph 3(c) hereof, the Variance Report required by paragraph 3(c) hereof;

(ii) A copy of any business plan approved by the Debtors' current board of directors as soon as reasonably practicable following such approval, together with a reconciliation to the prior business plan;

(iii) In-person or teleconference presentations by the Debtors and/or their advisors to the Prepetition Secured Parties and their advisors, at such times as the Prepetition Agent may reasonably request in writing (including via electronic mail), and at mutually agreeable places (to the extent such presentations are in-person); and

(iv) On or before the 5th business day before the end of current Budget Period, a budget for the successive calendar month thereafter, in each case substantially in the form of the Approved Budget (each, a "**Proposed Budget**"), which Proposed Budget (including any subsequent revisions to any such Proposed Budget), upon written approval by the Prepetition Agent, acting at the direction of the Required Lenders, shall become the

Approved Budget effective as of the last day of the current Budget Period provided the notice requirements in paragraph 3(d) hereof are satisfied.

(f)     **Independent Officer.**   Upon written request from the Prepetition Agent, the Debtors shall promptly seek an order appointing a chief restructuring officer and/or other independent officer acceptable to the Prepetition Agent, as applicable, in each case for the Debtors, with the terms and substance of such order and appointment acceptable to the Prepetition Agent.

(g)     **Pleadings.**   The Debtors shall provide to the Prepetition Agent and its counsel copies of all motions, pleadings, orders and filings at least two (2) business days prior to the filing thereof, and all such pleadings relating to the Collateral, including the Cash Collateral, shall be in form and substance acceptable to the Prepetition Agent.

(h)     **Other Covenants.**   The Debtors shall maintain their cash management arrangements in a manner consistent with this Court's December 27, 2019 order granting the Debtors' cash management motion.

5.     **Collateral Diminution**.   For purposes of this Fourth Interim Order, "**Collateral Diminution**" shall mean an amount equal to the diminution of the value from and after the Petition Date of the Prepetition Secured Parties' interests in the Prepetition Collateral upon which any of the Prepetition Secured Parties have valid, perfected, enforceable and non-avoidable liens or security interests, resulting from the use, sale, or lease of the Prepetition Collateral, including Cash Collateral (whether in accordance with the terms and conditions of this Fourth Interim Order or otherwise).   Cash payments made to the respective Prepetition Secured Parties pursuant to this Fourth Interim Order shall reduce each such respective Prepetition Secured Parties' Collateral Diminution on a dollar-for-dollar basis.   For the avoidance of doubt, the rights of all parties in interest, including any Committee (as defined herein), concerning whether Collateral Diminution has occurred and the extent and/or amount of such Collateral Diminution, are hereby expressly reserved.

6.     **Priority of Adequate Protection Liens and Adequate Protection Claims**.
Except for (i) the Carve Out and (ii) as otherwise provided in paragraph 4, the Adequate Protection Liens and Adequate Protection Claims granted to the Prepetition Secured Parties pursuant to

paragraph 4 of this Fourth Interim Order shall not be subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code and shall not be subordinated to or made *pari passu* with any lien, security interest or administrative claim under section 364 of the Bankruptcy Code or otherwise.

       7.    **Carve Out**.

       **(a)**     As used in this Fourth Interim Order, "**Carve Out**" shall mean the sum of (i) all fees required to be paid to the Clerk of the Bankruptcy Court and the U.S. Trustee pursuant to 28 U.S.C. § 1930(a), (ii) all allowed unpaid fees and disbursements included in the Approved Budget (whether allowed by interim order, final order, procedural order or otherwise) (the "**Allowed Professional Fees**") and incurred by professionals retained by the Debtors in rendering services to the Debtors that are incurred at any time before the delivery by the Prepetition Agent of written notice (via electronic mail, overnight delivery or hand delivery) to the Debtors, counsel to the Debtors, the U.S. Trustee, and counsel to any Committee, stating that a Termination Date or Termination Event (as such terms are defined herein) has occurred and is continuing and that the Post-Carve Out Notice Cap has been triggered (a "**Carve Out Notice**"), in each case, whether allowed by the Court prior to or after delivery of a Carve Out Notice, and (iii) the Allowed Professional Fees of the professionals retained by the Debtors and, subject to the limitations set forth in paragraphs 20 and 21 of this Fourth Interim Order, any professionals retained by any statutory committee appointed in these Cases, if any (a "**Committee**"), whose retention is approved by a final order of this court (which order has not been reversed, vacated, stayed or appealed), in each case, incurred on or after the first business day following delivery of the Carve Out Notice in an aggregate amount not to exceed $100,000 (the "**Post-Carve Out Notice Cap**"); *provided that*, such allowed Professional Fees with respect to any Committee may not exceed $10,000 in the aggregate, and (iv) reasonable fees and expenses incurred by a chapter 7 trustee under section 726(b) of the Bankruptcy Code in an amount not to exceed $25,000. Notwithstanding anything to the contrary in this Fourth Interim Order, the Allowed Professional Fees payable from the Carve Out shall be limited to the lesser of (x) the allowed amount of such Allowed Professional Fees and (y) the Approved Budgeted amounts for the applicable professional set forth in the professional fee schedule included in the Approved Budget; *provided*, that in no way shall the Carve-Out or the Budget or any of the foregoing be construed as a cap or limitation on the amount of Professional Fees due and payable by the Debtors or that may be allowed by the Court at any time.

       **(b)**     Any payment or reimbursement of Allowed Professional Fees made prior to the delivery of the Carve Out Notice shall not reduce the Carve Out. Any payment or reimbursement of Allowed Professional Fees made to any Professional Persons on or after the delivery of the Carve Out Notice shall permanently reduce the Carve Out on a dollar-for-dollar basis. For the avoidance of doubt, the funding or payment of the Carve Out from Cash on hand or other available Cash shall not reduce Prepetition Secured Indebtedness.

       **(c)**     Notwithstanding anything in this Fourth Interim Order to the contrary, no portion of the Carve Out or any other Prepetition Collateral or Collateral, shall be used for

professional fees and expenses (i) incurred by any party that is not a Debtor, or (ii) subject to paragraph 20, to investigate, challenge, object to, contest, or raise any defense to, the validity, security, perfection, priority, extent or enforceability of any amount due under or the liens or claims granted under or in connection with the Finance Documents.

8.    **Postpetition Lien Perfection**.    Without the necessity of the filing of financing statements, security agreements, federal or state notices, pledge agreements, recordings, mortgages or other documents or taking possession or control of any Collateral, this Fourth Interim Order shall be sufficient evidence of the Prepetition Secured Parties' perfected security interests and liens granted in the Collateral pursuant to this Fourth Interim Order.    Notwithstanding the foregoing, the Debtors are authorized and directed to execute such documents including, without limitation, mortgages, pledges and Uniform Commercial Code financing statements and to use Cash Collateral to pay such costs and expenses as may be reasonably requested by the Prepetition Agent to provide further evidence of the perfection of the Prepetition Secured Parties' security interests and liens in the Collateral as provided for herein.    All such documents shall be deemed to have been recorded and filed as of the Petition Date.

9.    **Inspection Rights**.    In addition to, and without limiting, whatever rights to access the Prepetition Secured Parties have under the Finance Documents, upon reasonable prior written notice (including via acknowledged electronic mail) during normal business hours, the Debtors shall permit representatives, agents and employees of the Prepetition Agent to (i) have reasonable access to and inspect and copy the Debtors' books and records, including all records and files of the Debtors pertaining to the Prepetition Collateral and the Collateral, (ii) have reasonable access to and inspect the Debtors' properties and (iii) discuss the Debtors' affairs, finances, and condition with the Debtors' officers and advisors.

10.    **Termination**.    Subject to the Waiting Period (as defined herein) and paragraphs 7 and 12, the Debtors' right to use the Cash Collateral pursuant to this Fourth Interim

Order shall automatically terminate (the date of any such termination, the "**Termination Date**")

without further court proceedings on the earliest to occur of any of the events set forth in clauses

(a) through (n) below (such events, collectively, the "**Termination Events**"):

(**a**)    the passing of 5:00 p.m. (prevailing Eastern Time) on February 29, 2020, unless extended with the written consent of the Prepetition Agent, acting at the direction of the Required Lenders, in its sole discretion, which extension thereof shall be effective without further application to, or approval by, the Court;

(**b**)    entry of any order modifying, reversing, revoking, staying, rescinding, vacating, or amending this Fourth Interim Order without the express written consent of the Prepetition Agent, acting at the direction of the Required Lenders;

(**c**)    any Debtor's case is dismissed or converted to a case under chapter 7 of the Bankruptcy Code, or, without the express written consent of the Prepetition Agent, acting at the direction of the Required Lenders, a trustee under chapter 11 of the Bankruptcy Code or an examiner with expanded powers is appointed in any Debtor's case, or any Debtor seeks entry of an order accomplishing any of the foregoing;

(**d**)    except as otherwise provided in this Fourth Interim Order, an order is entered granting another claim or lien pari passu with or senior to the Prepetition Liens, Adequate Protection Liens or Adequate Protection Claims granted to the Prepetition Secured Parties under this Fourth Interim Order or an order of the Court is entered reversing, staying for a period in excess of five (5) business days, vacating or otherwise amending, supplementing, or modifying this Fourth Interim Order in a manner materially adverse to the Prepetition Secured Parties, in each case without the written consent of the Prepetition Agent acting at the direction of the Required Lenders;

(**e**)    any proceeding is commenced by any Debtor seeking, or otherwise consenting to, (x) the invalidation, subordination, or other challenge to the Prepetition Secured Indebtedness, Prepetition Liens, Prepetition Secured Claims, Adequate Protection Liens or Adequate Protection Claims or (y) any relief under section 506(c) of the Bankruptcy Code with respect to any Prepetition Collateral or any Collateral, including the Cash Collateral, or (ii) any Debtor files a motion, pleading, or proceeding or seeks relief that could reasonably be expected to result in a material impairment or restriction of the rights, remedies or interests of the Prepetition Secured Parties, except any motion or other pleading otherwise permitted by this Fourth Interim Order;

(**f**)    the entry by this Court of an order granting relief from the automatic stay imposed by section 362 of the Bankruptcy Code to allow any entity other than the Prepetition Agent or the Prepetition Secured Parties to execute upon or enforce a lien or claim on any Prepetition Collateral or Collateral, in each case having a fair market value of more than $100,000, without the written consent of the Prepetition Agent, acting at the direction of the Required Lenders, which consent may be withheld in its sole discretion;

(g)    the effective date of any confirmed chapter 11 plan for the Debtors;

(h)    the entry of a subsequent order of the Court terminating the Debtors' use of Cash Collateral;

(i)    the failure by the Debtors to make any payment required pursuant to this Fourth Interim Order when due;

(j)    the failure by the Debtors to deliver to the Prepetition Agent any of the documents or other information required to be delivered pursuant to this Fourth Interim Order when due or any such documents or other information shall contain a material misrepresentation to the extent such failure is not cured within two (2) business days of receipt by the Debtors of notice of such default, *provided, however, that* such cure period does not extend the Waiting Period;

(k)    the failure to adhere to the Approved Budget except with respect to Permitted Deviations;

(l)    any Project Document (as defined in the Credit Agreement), including, but not limited to, the MSA, is modified, amended, restated, supplemented, assumed, rejected or terminated, in each case, without the written consent of the Prepetition Agent, acting at the direction of the Required Lenders;

(m)    the failure by the Debtors to comply with, observe or perform any of the material terms or material provisions contained herein, including, but not limited to, paragraph 22 of this Fourth Interim Order; and

(n)    the entry of an order of this Court approving the terms of any debtor in possession financing for any of the Debtors.

11.    **Remedies After a Termination Date**.  Subject to entry of the Final Order and to the extent provided therein, and subject to the provisions of this paragraph 11 and paragraphs 7 and 12, the Debtors' authority to use Cash Collateral shall automatically terminate upon five (5) calendar days' prior written notice (the "**Waiting Period**") to the Debtors (copies of which shall be filed on the docket for these Cases and provided to counsel to the Debtors, counsel to any Committee, counsel to Partners Group Seabras, LLC and the U.S. Trustee) given upon the occurrence or during the continuance of a Termination Event all without further order or relief from the Court, and a hearing with respect to vacating or otherwise modifying the automatic stay under section 362 of the Bankruptcy Code to the extent necessary to permit the Prepetition Secured Parties to exercise all rights and remedies against the Prepetition Collateral and the Collateral,

including the Cash Collateral, provided for in this Fourth Interim Order, the Finance Documents, and applicable law shall be held on an expedited basis. The Debtors and the Prepetition Secured Parties consent to such a hearing on an expedited basis; *provided that* (x) if a hearing to consider the foregoing is requested to be heard before the end of the Waiting Period but is scheduled for a later date by the Court, the Waiting Period shall be automatically extended to the date of such hearing, but in no event later than eight (8) business days after delivery of the notice commencing the Waiting Period; and (y) the only issues that may be raised by the Debtors in connection with or at such hearing shall be (A) whether, in fact, a Termination Event has occurred and is continuing and (B) the quantum of any Collateral Diminution. In addition, during the Waiting Period, except as may be otherwise ordered by the Court, the Debtors shall not use any Cash Collateral except for critical and necessary expenses set forth in the Approved Budget. Nothing herein shall alter the burden of proof set forth in the applicable provisions of the Bankruptcy Code at any hearing on any request by the Debtors or other party in interest to re-impose or continue the automatic stay under section 362(a) of the Bankruptcy Code, use Cash Collateral, or to obtain any other injunctive relief. Any delay or failure of the Prepetition Agent or Lenders to exercise rights under the Finance Documents or this Fourth Interim Order shall not constitute a waiver of their respective rights hereunder, thereunder or otherwise. The rights and remedies of the Prepetition Secured Parties specified herein are cumulative and not exclusive of any rights or remedies that they may otherwise have. Notwithstanding anything in this paragraph to the contrary, after notice and hearing, the Court may order such relief as it determines is appropriate following a Termination Event, which relief may or may not include an authorization for the foreclosure or repossession of assets.

12. **Payments Free and Clear**. Subject to entry of the Final Order and to the extent provided therein, any and all payments or proceeds remitted to the Prepetition Agent on

behalf of the Lenders pursuant to the provisions of this Fourth Interim Order or any subsequent order of this Court shall be irrevocable (subject to paragraph 21 of this Fourth Interim Order), received free and clear of any claim, charge, assessment or other liability, including, without limitation, subject to entry of the Final Order and to the extent provided therein, any such claim or charge arising out of or based on, directly or indirectly, sections 506(c) (whether asserted or assessed by, through or on behalf of the Debtors) or 552(b) of the Bankruptcy Code.

13.      **Limitation on Charging Expenses Against Collateral**.  Subject to entry of the Final Order and to the extent provided therein, all rights to surcharge the interests of the Prepetition Secured Parties in any Prepetition Collateral or Collateral under section 506(c) of the Bankruptcy Code or any other applicable principle or equity or law shall be and are hereby finally and irrevocably waived, and such waiver shall be binding upon the Debtors and all parties in interest in the Cases.

14.      **Reservation of Rights of the Prepetition Secured Parties**.  This Fourth Interim Order and the transactions contemplated hereby shall be without prejudice to (i) the rights of the Prepetition Secured Parties to seek additional or different adequate protection, including, but not limited to, with respect to paragraph 3 of this Fourth Interim Order, move to vacate the automatic stay, move for the appointment of a trustee or examiner, move to dismiss or convert the Cases, or to take any other action in the Cases and to appear and be heard in any matter raised in the Cases, or any party in interest from contesting any of the foregoing, and (ii) any and all rights, remedies, claims and causes of action that the Prepetition Agent, and the Prepetition Secured Parties may have against any non-Debtor party liable for the Prepetition Secured Indebtedness. For all adequate protection purposes throughout the Cases, the Prepetition Secured Parties shall be deemed to have requested relief from the automatic stay and adequate protection for any Collateral

Diminution from and after the Petition Date.  For the avoidance of doubt, such request will survive termination of this Fourth Interim Order.

15.    **Modification of Automatic Stay**.  The Debtors are authorized and directed to perform all acts and to make, execute and deliver any and all instruments as may be reasonably necessary to implement the terms and conditions of this Fourth Interim Order and the transactions contemplated hereby.  The stay of section 362 of the Bankruptcy Code is hereby modified to permit the parties to accomplish the transactions contemplated by this Fourth Interim Order.

16.    **Survival of Fourth Interim Order**.  The provisions of this Fourth Interim Order shall be binding upon any trustee appointed during the Cases or upon a conversion to cases under chapter 7 of the Bankruptcy Code, and any actions taken pursuant hereto shall survive entry of any order which may be entered converting the Cases to chapter 7 cases, dismissing the Cases under section 1112 of the Bankruptcy Code or otherwise, or confirming or consummating any plan(s) of reorganization.  The terms and provisions of this Fourth Interim Order, as well as the priorities in payments, liens, and security interests granted pursuant to this Fourth Interim Order shall continue notwithstanding any conversion of the Cases to chapter 7 cases under the Bankruptcy Code, dismissal of the Cases or confirmation or consummation of any plan(s) of reorganization.  Subject to the limitations described in paragraph 21 of this Fourth Interim Order, the adequate protection payments made pursuant to this Fourth Interim Order shall not be subject to counterclaim, setoff, subordination, recharacterization, defense or avoidance in the Cases or any subsequent chapter 7 cases (other than a defense that the payment has actually been made); *provided that* recharacterization will be allowed to the extent otherwise provided in this Fourth Interim Order; *provided further that* if a Final Order is entered, then this Fourth Interim Order will bind the chapter 7 estate only to the extent provided in the Final Order.

17.     **Reserved.**

18.     **Binding Effect**.  The terms of this Fourth Interim Order shall be valid and binding upon the Debtors, all creditors of the Debtors and all other parties in interest from and after the entry of this Fourth Interim Order by this Court.

19.     **Reversal, Stay, Modification or Vacatur**.  In the event the provisions of this Fourth Interim Order are reversed, stayed, modified or vacated by court order following notice and any further hearing, such reversals, modifications, stays or vacatur shall not affect the rights and priorities of the Prepetition Secured Parties granted pursuant to this Fourth Interim Order. Notwithstanding any such reversal, stay, modification or vacatur by court order, any indebtedness, obligation or liability incurred by the Debtors pursuant to this Fourth Interim Order arising prior to the Prepetition Agent's receipt of notice of the effective date of such reversal, stay, modification or vacatur shall be governed in all respects by the original provisions of this Fourth Interim Order, and the Prepetition Secured Parties shall continue to be entitled to all of the rights, remedies, privileges and benefits, including any payments authorized herein and the security interests and liens granted herein, with respect to all such indebtedness, obligation or liability, and the validity of any payments made or obligations owed or credit extended or lien or security interest granted pursuant to this Fourth Interim Order is and shall remain subject to the protection afforded under the Bankruptcy Code.

20.     **Limitation on Use of Cash Collateral.**  Notwithstanding anything herein to the contrary, no portion of the Carve-Out or Prepetition Collateral, including Cash Collateral, shall include, apply to, or be available for any fees, costs or expenses incurred by any party, including the Debtors or the Official Committee of Unsecured Creditors appointed in these Cases (the "**Creditors' Committee**"), if any, in connection with any of the following: (a) the

investigation (including by way of examinations or discovery proceedings), initiation, assertion,

joining, commencement, support or prosecution of any claims, counter-claims, causes of action,

adversary proceedings, applications, motions, objections, defenses, or other contested matters

against any of the Prepetition Secured Parties and each of their respective Releasees with respect

to any contested matter, adversary proceeding, or other matter challenging or otherwise objecting

to the admissions, stipulations, findings, or releases included in paragraphs C, D, E, and F herein

(the "**Stipulations**"), including, (i) investigating or challenging the amount, validity, extent,

perfection, priority, or enforceability of, or asserting any defense, counterclaim, or offset to the

Prepetition Secured Indebtedness or Obligations or security interests and liens of the Prepetition

Secured Parties in respect thereof, (ii) investigating or asserting any claims or causes of action

arising under chapter 5 of the Bankruptcy Code against the Prepetition Secured Parties, (iii)

investigating or asserting any so-called "lender liability" claims and causes of action against the

Prepetition Secured Parties; and (iv) investigating or asserting any action seeking to invalidate, set

aside, avoid or (other than as contemplated by this Fourth Interim Order and section 510(a) of the

Bankruptcy Code) subordinate, in whole or in part, the Prepetition Secured Indebtedness or

Obligations (each, a "**Loan Party Claim**"), *provided*, *however*, the Creditors' Committee (if any)

may use up to $10,000 (the "**Investigation Budget**") to investigate the foregoing items (i) through

(iv) in this paragraph 20, *provided, further, however* that no portion of the Investigation Budget

may be used by the Creditors' Committee (if any) or any other party to prosecute or support any

claims or challenges; (b) the assertion of any claims or causes of action against the Prepetition

Secured Parties, including, without limitation, claims or actions to hinder or delay the assertion,

enforcement or realization on the Prepetition Collateral or the liens securing the Prepetition

Secured Indebtedness or Obligations in accordance with this Fourth Interim Order other than to

contest in good faith the occurrence or continuance of any Termination Event; (c) seeking to modify any of the rights, remedies, priorities, privileges, protections and benefits granted to the Prepetition Secured Parties hereunder or under the Finance Documents, in each of the foregoing cases without such applicable parties' prior written consent; (d) the payment of any amount on account of any claims arising prior to the Petition Date unless such payments are permitted by the Approved Budget (subject to any Permitted Variances) or are approved by order of the Court; or (e) any purpose that is prohibited under the Bankruptcy Code. For the avoidance of doubt, nothing in this Fourth Interim Order shall be deemed to preclude any party with standing from challenging the value of the Prepetition Collateral or any other assets of the Debtors.

21.    **Reservation of Certain Third Party Rights and Bar of Challenge and Claims**. The Creditors' Committee (if any) shall have until the date that is sixty (60) calendar days, and any other party in interest solely to the extent such party is granted standing, shall have seventy-five (75) calendar days, from the date of entry of this Fourth Interim Order (in each case, the "**Investigation Termination Date**") to commence an appropriate contested matter or adversary proceeding (a "**Challenge**") asserting any Loan Party Claim. If a motion seeking standing to file a Challenge is not filed (or with respect to the Creditors' Committee (if any), a Challenge is not filed) on or before the Investigation Termination Date then: (a) the Stipulations shall be irrevocably binding on the Debtors, the Creditors' Committee (if any), all creditors of the Debtors, and all parties-in-interest and any and all successors-in-interest as to any of the foregoing, including any chapter 11 trustee appointed in the Chapter 11 Cases or chapter 7 trustee appointed in any subsequent chapter 7 cases for all purposes, without further action by any party or this Court, and the Debtors, the Creditors' Committee (if any), all creditors of the Debtors, and any other party-in-interest and any and all successors-in-interest as to any of the foregoing, including any

chapter 11 trustee appointed in the Chapter 11 Cases or chapter 7 trustee appointed in any subsequent chapter 7 cases, shall thereafter be forever barred from bringing any Challenge with respect thereto; (b) the Prepetition Liens shall be deemed to constitute valid, binding, enforceable and perfected liens and security interests not subject to avoidance or disallowance pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (c) the Prepetition Secured Indebtedness and Obligations shall be deemed to be finally allowed claims for all purposes against each of the respective Debtors, including in any subsequent chapter 7 cases, in the amounts set forth in paragraph C herein, and shall not be subject to challenge by any party-in-interest as to validity, priority or otherwise; and (d) the Debtors shall be deemed to have released, waived and discharged the Releasees, from any and all claims and causes of action arising out of, based upon or related to, in whole or in part, the Prepetition Secured Obligations, including on the terms set forth in paragraph D herein; *provided, however that* the Releasees shall not be released from claims or causes of action determined in a final, non-appealable judgment of a court of competent jurisdiction to have arisen primarily from such party's gross negligence or willful misconduct. Notwithstanding anything to the contrary herein, except to the extent that such Stipulations are successfully challenged in such Challenge: (x) if any such Challenge is timely commenced, the Stipulations shall nonetheless remain binding and preclusive on all parties-in-interest (other than the party that has brought such Challenge in connection therewith and then only with respect to the Stipulations that are subject to the Challenge and not to any Stipulations not subject to the Challenge); and (y) the Prepetition Secured Parties reserve all of their rights to contest on any grounds any Challenge and preserve any and all of their rights to appeal and stay any orders issued in connection with a successful Challenge.  For the avoidance of doubt, the Creditors' Committee (if any) is hereby granted standing; *provided, however,* nothing in this Fourth Interim Order shall

confer standing or authority on any other "person" (as defined in the Bankruptcy Code) to pursue any cause of action belonging to the Debtors or their estates.

22. **DSR Accounts**.  Notwithstanding anything to the contrary in this Fourth Interim Order, the Debtors are not authorized to and may not use the cash in the two debt service reserve accounts with Deutsche Bank: the COFACE debt service reserve account (Account #XXXXXX-001.3) and the CSS debt service reserve account (Account #XXXXXX-001.4) (together, the "**DSR Accounts**") unless agreed to in writing by the Prepetition Agent, acting at the direction of the Required Lenders, *provided that* a copy of such written agreement shall be provided to counsel to Partners Group Seabras, LLC.

23. **Enforceability; Waiver of Any Applicable Stay**.  This Fourth Interim Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry hereof.  Notwithstanding Bankruptcy Rules 6004(h), 6006(d), 7062 or 9014 of the Bankruptcy Rules or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Fourth Interim Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Fourth Interim Order.

24. **Proofs of Claim**.  Notwithstanding any order entered by the Court in relation to the establishment of a bar date in the Cases to the contrary, or otherwise, neither the Prepetition Agent nor the Prepetition Secured Parties are required to file proofs of claim in any of the Cases or successor cases, and the Stipulations shall be deemed to constitute a timely filed proof of claim against the applicable Debtors.  Notwithstanding the foregoing, the Prepetition Agent (on behalf of itself and the other Prepetition Secured Parties) is hereby authorized and entitled, in its sole discretion, but not required, to file (and amend and/or supplement, as it sees fit) a master proof

of claim for any claims of the Prepetition Secured Parties arising from the applicable Finance Documents; *provided that* nothing herein shall waive the right of any Prepetition Secured Party to file its own proofs of claim against the Debtors.

25. **Good Faith**. The Prepetition Secured Parties have acted in good faith in connection with this Fourth Interim Order and their reliance on this Fourth Interim Order has been and is in good faith.

26. **Section 552(b) of the Bankruptcy Code**.  Subject to entry of the Final Order and to the extent provided therein, the Prepetition Agent and the Lenders shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Prepetition Agent and the Lenders with respect to proceeds, products, offspring or profits of any of the Prepetition Collateral or the Collateral.

27. **No Marshaling**.  Subject to entry of the Final Order and to the extent provided therein, neither the Prepetition Agent nor the Prepetition Secured Parties shall be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Prepetition Collateral or the Collateral except as provided herein, as applicable.

28. **Credit Bidding**.  Subject to entry of the Final Order and to the extent provided therein, the Debtors agree not to object to a Prepetition Secured Party's right to credit bid as part of any asset sale process an amount up to the full amount of their respective claims during any sale of their Collateral, including without limitation, sales pursuant to section 363 of the Bankruptcy Code or included as part of any chapter 11 plan subject to confirmation under section 1129(b)(2)(A)(ii)–(iii) of the Bankruptcy Code, without prejudice to the right of any other party to object.

29.    **NJ DEP Letter of Credit**. Notwithstanding anything to the contrary in this Fourth Interim Order, the Debtors and the Prepetition Secured Parties agree that $319,300 on deposit in Debtor Seabras 1 USA, LLC's operating account (Account #XXXXX5281) (the "**JPMorgan Operating Account**") at JPMorgan Chase Bank, N.A. ("**JPMorgan**") shall not be deemed as Prepetition Collateral or Collateral solely to the extent and in the amount needed to reimburse JPMorgan for any amounts JPMorgan is required to pay to the New Jersey Department of Environmental Protection ("**NJ DEP**") in connection with that certain irrevocable standby letter of credit issued by JPMorgan for the benefit of the NJ DEP (as it may be amended, extended or modified, from time to time, the "**JPMC Letter of Credit**").  The Debtors further agree that the cash balance in the JPMorgan Operating Account shall not be less than $319,300 at any time that the JPMC Letter of Credit is outstanding.

30.    **Headings**.  The headings in this Fourth Interim Order are for purposes of reference only and shall not limit or otherwise affect the meaning of this Fourth Interim Order.

31.    **Controlling Effect of Fourth Interim Order**. To the extent any provision of this Fourth Interim Order conflicts or is inconsistent with any provision of the Motion, the order granting the Debtors' cash management motion, the Interim Orders or any other order of this Court, the provisions of this Fourth Interim Order, until superseded by the Final Order, shall control to the extent of such conflict or inconsistency.

Dated: February 19th, 2020
New York, New York

/s/ STUART M. BERNSTEIN
HONORABLE STUART M. BERNSTEIN
UNITED STATES BANKRUPTCY JUDGE

**Exhibit 1**
**Budget**

Exhibit 1 – Budget

# Seabras-1
# Cash Flow Budget

*USD-000's*

|  | Debtors Feb20-Feb29 Budget | Commentary: |
|---|---:|---|
| Customer Receipts | 843 | Full month forecast for debtor entities |
| Brazilian Inter-Co Receipts | - | No activity planned in Feb |
| **Total Cash Receipts** | **843** | |
| Total Operating Expenditures | (1,799) | See line item detail on following schedule |
| **Cash EBITDA** | **(957)** | |
| Capital Expenditures | - | YTD proposed budget of ~$1.8M (consol) of which ~$0.1M spent; timing now expected in Mar/Ap |
| Taxes | - | No activity planned in Feb |
| **Operating CFADS** | **(957)** | |
| Equity CSSF Draws | - | No activity planned in Feb |
| **Total CFADS** | **(957)** | |
| Debt Principal | - | No activity planned in Feb |
| Interest | - | No activity planned in Feb |
| **Total Debt Service** | **-** | |
| DSRA | - | No activity planned in Feb |
| Brazilian Inter-Co Funding (1) | - | Next inter-co funding planned for Mar20 |
| **Cash Increase/(Decrease) Per Proposed Budget** | **(957)** | |
| Restructuring Expenses (2) | (277) | Clifford Chance Jan invoice received; to be paid per order in Feb |
| AP Float | (16) | Checks disbursed in Jan20; budgeted to clear in Feb |
| **Adjusted Cash Increase/(Decrease)** | **(1,249)** | |
| **Beginning Cash Balance (Unrestricted)** | **19,632** | Actual cash balance @ 1/31/20 |
| **Ending Cash Balance (Unrestricted)** | **18,383** | |

*(1) Includes operating cash flow needs for Brazilian operating subsidiary to be funded by parent*

*(2) Includes professional service fees related to restructuring (legal, UST, etc…)*

19-14006-smb    Doc 130    Filed 02/19/20    Entered 02/19/20 12:15:43    Main Document    Pg 28 of 30

# Seabras-1
# Total Operating Expenditure Budget

*USD-000's*

| Direct Operating Cost (ex. MPLS): | Debtors Feb20-Feb29 Budget | Commentary: |
|---|---|---|
| Network Related Opex (Capacity & O&M) | 65 | |
| Technical Space Opex (PoP's) | 98 | |
| APMA Maintenance | - | |
| Cable Station Opex (Landing Stations/NOC) | 76 | |
| Technical Supplies, Cross Connect, & Other | 12 | |
| Infinera Annual Software & Support Maintenance | - | |
| FCC Annual Fees | - | |
| Post Warranty Support - Terminal Equipment | - | Still negotiating rate; now expecting to pay in Mar20; originally budgeted in Jan20 |
| Contingency - Equipment Repair | - | |
| Contingency - Marine Callout Charge | - | |
| **Total Operating Cost (ex. MPLS):** | **251** | |
| | | |
| **Administrative Opex:** | | |
| Seaborn MSA (1) | 913 | See MSA line item detail on following schedule |
| Commissions - Direct Partner Sales | 18 | |
| Legal | - | |
| Consulting | - | |
| Accounting, Audit and Tax | - | |
| Other Administrative Opex | - | |
| **Total Administrative Opex:** | **931** | |
| | | |
| IP/MPLS Opex | 583 | Telxius Dec post-petition & Jan budget rolled forward; pending invoices |
| Pass-Thru Opex Additions (Burst / Off-Net) | 34 | Off-Net & IP Transit Pass-Thru Added (See Q419 sales for revenue off-set) |
| | | |
| **Total Operating Expense Per Proposed Budget** | **1,799** | |

*(1) MSA budget at debtor level reflects prior month expenses incurred at Seaborn level given MSA is paid one month in arrears.*

19-14063-smb    Doc 130    Filed 02/19/20    Entered 02/19/20 12:15:43    Main Document    Pg 29 of 30

# Seabras-1
## Seaborn MSA Expenditure Budget

*USD-000's*

|  | Debtors |
| :--- | :---: |
|  | **Feb20-Feb29** |
| **Seaborn 'Indirect' MSA Cost:** | Budget |
| Personnel - Payroll, Benefits | 515 |
| Personnel - Travel, Training, Recruiting | 96 |
| Personnel - Commissions | - |
| Personnel - MIP Bonus | - |
| Outside Consulting | 65 |
| Marketing - Trade Shows | 60 |
| Marketing - PR/Other | 6 |
| IT Expense & Depreciation | 16 |
| Software Services | 24 |
| Insurance | 17 |
| Rent | 17 |
| Office Supplies & Expenses | 6 |
| Communication Costs (Phone, Internet, Network) | 4 |
| Dues, Subscriptions, Association Fees | 1 |
| NOC Expenses | - |
| Accounting, Audit, & Tax | 1 |
| Bank Charges | 2 |
| Shipping Freight & Postage | - |
| Regulatory Compliance | - |
| Technical support contracts | - |
| Equipment maintenance contracts | - |
| Other | - |
| **MSA Expense:** | **830** |
| MSA Margin - 10% | 83 |
| MSA Taxes - BR | - |
| **Total MSA Cost:** | **913** |

**Commentary:**